This is a petition in Chancery, filed under the provisions of sec. 900, of the Code, for the purpose of testing the validity of an election held in the Seventh Chancery Division of this State, and under which the defendant, Lauck, claims to have been elected to the office of Chancellor of said Division.
The petitioner, Barry, was appointed by the Governor of this State, to fill a vacancy existing in the office of Chancellor of that Division, until his success- or should be chosen and qualified — his commission taking effect on the 11th day of September, 1865. On *590 the 21st of February, 1868, the Governor issued his proclamation, ordering an election to be held in said Division, on the 28th of March, 1868, to fill said vacancy, and issued writs of election to the Sheriffs of the six counties constituting the Division.
The election was held at the time fixed, and on the 8th of April, 1868, the Governor issued a commission to the defendant, as Chancellor of said Division, reciting that he was duly elected to the office. This petition was filed, April 8, 1868, and notice of the contest given to the Governor before the issuance of the commission to Lauek.
Both Barry and Lauek were candidates, running and voted for at this election; but the petition is filed for the purpose of setting the election aside altogether, and not for the purpose of establishing that Barry was elected; he insisting by his petition, that, by virtue of his appointment and commission, he is entitled to hold the office for the full constitutional term of eight years, and claiming that the election was void, as well because no vacancy existed which an election could be ordered to fill, as because of numerous errors and irregularities in the conduct of the election proceedings.
The prayer of the petition is, that the election be declared void, for the reasons therein set forth. No objection has been taken to the right of Barry to file a bill of this nature.
The position assumed by Barry, that by virtue of his commission from Governor Brownlow, he is entitled to his office for the full constitutional term of eight years, cannot be sustained. He must be considered as *591 merely filling the vacancy to which he was appointed, until the election of his successor; and the election might lawfully be ordered to fill the vacancy: Code, sec. 815.
Many questions are raised in argument, which we do not deem it necessary to decide.
The Seventh Chancery Division, in which this contest arose, is composed of six counties, embracing within their limits, ninety-four civil districts, in each of which civil districts, the law requires a poll to be opened whenever an election occurs embracing the county.
The Code requires the Sheriff of each county to give notice of the time, place and object of each special election ordered, by publication in some newspaper in the county, if there be one, and if not, then by notice at the court-house door and at each voting place in his county. It does not appear that there was any failure to give this notice, except on the part of the Sheriff of Macon County, who posted a notice at the door of the court-house, but at no other place in the county, and made no publication in any newspaper. No reason appears for the omission.
We mate no decision as to the necessity of new notices by the Commissioners of Registration, in lieu of those already made by the Sheriffs, upon the passage of the law which transferred the authority to hold the elections, from the Sheriffs to the Commissioners, after notices had been given; it not being material to a decision of the case.
The County of Macon contains twelve civil districts *592 and voting places, and 837 registered voters, The polls were actually opened, and elections held at nine of these voting places, Barry receiving thereat, 78, and Lauck, 804 ballots.
The five counties in the Chancery Division, besides Macon, contain 82 civil districts, and in 31 of these, no polls were opened. In regard to some of these districts, the failure appears to have been in consequence of a sufficient number of voters not attending to open the polls; in others, because no Judges or Clerks were appointed to hold the election; in others, because the persons appointed as Judges and Clerks neglected or refused to act; and as to others still, no reason appears. In many of the districts where the polls were opened, the law was disregarded as to the hours of opening and closing. We are not prepared to say that actual fraud is proved, but there is much reason to suspect that the failure to hold the election in some of these districts was the result of a fraudulent intention on the part of local officers or appointees, to prevent an election at particular localities. But, however this may be, in the proceedings throughout the Chancery Division, there is apparent, an astonishing degree of carelessness, inefficiency, indifference to duty, and failure to perform it, on the part of the officers whose duty it was to give notice of, and superintend the election, with the natural effect of great irregularity and confusion in the proceedings, and uncertainty as to the result.
The number of registered voters in the entire Chancery Division was 8,253. The total number of ballots *593 cast in all the districts voting, was 3,455, of which a majority of 375 were given for Lauck.
Great confusion resulted in consequence of the enactment hy the Legislature, after this election had been ordered, and notices published, of a law requiring all elections to be held by the Commissioners of Registration, instead of by the Sheriffs as theretofore. This statute came to the knowledge of the several county officers, at a late day, and in consequence, the elections at some points, were held by the Sheriffs and their deputies, and at others, by the Commissioners and their appointees; and in some instances, both took part. The Sheriffs had no legal authority to hold the elections after the passage of that Act.
In determining what circumstances of official omission or misconduct will avoid an election, the object to be attained by an election must be kept in view, to wit: The ascertaining of the will of the community upon a particular question. Whatever statutory provisions are essential to the attainment of this end, are obviously indispensible; and whatever precautions prescribed by statute against mistake or fraud, are of such a nature that their omission in the particular instance has resulted in a fraud upon the electors, or has rendered the result of the election incurably uncertain, or the future omission of which, in the future, if permitted, must necessarily prove avenues of fraud, tend to prevent a fair exercise of the franchise, or to render elections insecure and uncertain, must be held to be matter of substance, and essential to the validity of the proceeding.
*594 But a mere voluntary omission to vote, on the part of those entitled, where a full and fair opportunity has been offered, will not alone avoid the election. Those who- did exercise their electoral rights, cannot he deprived of the fair results of the election, by the mere failure of others to vote. The question is not, whether all the legal voters in the district actually expressed their will at the polls, but whether they had the opportunity which the law requires, to do so.
This being a special election, notice to the electors was essential to its validity; and for want of-this notice, the election, so far as it concerns Macon County, was. void. The fact that an election was actually held in nine out of the twelve civil districts in that county, cannot obviate this objection, as it cannot be known how many of the voters of the county were deprived' of the privilege of voting by the want of notice. But a more difficult question is as to the effect of a failure to hold a valid election in one county of a tChancery .Division, upon an election extending over the entire division.
• This question was considered by this Court in the case of Marshall vs. Kerns, 2 Swan, 68. At a county election, it appeared that Marshall had received 199 votes, and Kern 196, and that through the fault of an officer no election was held in one civil district of the county, ’ though twenty electors attended at the place of voting, and that fifty or sixty resided in the district. It was held that the election was void, upon the ground, that if the election had been held in this ommitted district, the result might have been different.
*595 The question again arose in Louisville & Nashville R. R. Co. vs. County Court, 1 Sneed 637, where nothing appeared in the case, except the naked fact that at one civil district of the county, the polls were not opened, and no other fact was stated. The election was held valid; the Court distinguishing the case from Marshal vs. Kerns, and saying that in that case, “It appeared that voters enough were deprived of the right, and that against their will, to have changed the result.”
McCraw vs. Harralson, 4 Cold., 34, was another case in which at a county election, the, election had failed to be held in one of the civil districts of the county. The Court in its opinion, says: “It does not appear in this record what the plaintiff’s majority was; nor does it appear if all the voters who attended at the 10th civil district, where the ballot box was not opened, had cast their votes either the one way or the other, it would have, changed the result. The mere fact that the election was not holden at this precinct, is not sufficient to vitiate it; there must be something more. The - general result of the election must be shown to be affected by it; the burden of showing this lies upon those who contest the general returns of the Sheriff,”
In Ex parte, Heath, 3 Hill, N. Y., the election was held in four districts, composing the sixth ward of the City of New York. The returns were regularly made from three of these districts, showing a majority of ballots for the relator, but in the fourth *596 district the ballots were destroyed by a mob, before being counted. It was contended that this left the result in such uncertainty, that the election must be declared void. But the Court held the election valid, and that, to give the loss of the ballots any effect, it must at least be shown that, but for such loss the result would have been different.
The Supreme Court of Michigan, held, that a law submitting to the voters of a county, the question of removing the county site, is void if there is no mode under the law, by which a city within the county can participate in the election: Attorney-General vs. The Supervisors, 11 Mich., 63. See also Fort Dodge vs. The District, etc., 17 Iowa, 86.
In People vs. Cicott, 16 Mich., 305, it is held, that, if illegal ballots are received at an election, in number sufficient to change the declared result, and it not appearing for whom such illegal ballots were cast, the election must be held void for uncertainty. See Cooley Const., Lim., 620.
Judge Cooley, in a recent work, says, upon this subject: “Although the failure of one election precinct to hold an election, or to make a return of the votes cast, might not render the whole election a nullity, where the electors of that precinct were at liberty to vote had they chosen, or where, having voted, but failed to make return, it is not made to appear that the votes not returned would have changed the result; yet, if any action was required of the public authorities preliminary to the election, and that which was taken was *597 not such as to give all the electors the opportunity to participate, and no mode was open to the electors by which the officers might be compelled to act, it would seem that such neglect, constituting as it would, the disfranchisement of the excluded electors pro hae vice, must, on general principles, render the whole election nugatory; for that cannot be called an election, or the expression of the popular sentiment, where a part only of the electors have been allowed to be heard, and the others, without being guilty of fraud or negligence, have been excluded:” Cooley Con. Lim., 616.
Courts will be very reluctant to interfere for the purpose of setting aside an election extending over large districts, for the mere failure to give notice of, or to hold it, in small and unimportant local precincts, even though there may be some theoretical uncertainty as to whether the will of the people has on the whole been ascertained.
But where there has been a total failure on the part of the officers whose duty it is, to give the notices requisite to the validity of a special election, and such failure operates as a practical disfranchisement of the legal voters of an entire county in a single judicial district, this is such a substantial and material ^failure of the electoral franchise, as compels us to regard the election as a nullity throughout the entire district.
The safety of the State depends upon the preservation of the integrity of the elective franchise and the purity of the elections; and these can only be preserved by requiring the officers charged with duties in regard *598 thereto, to comply with all' the essential requisites of the laws placed, to guard the franchise against abuse, fraud or violence.
In the present instance, the number of registered voters in Macon County who did not vote, was more than sufficient, if they had all voted one way, to have changed the'result as declared. We have no means of knowing how their -ballots would have been cast if they had voted, and must presume that their failure to vote was the result of want of notice; and therefore we have no assurance that the result of this election is ah-expression of the will of the people of that county, or of the judicial district.
The failure to give notice of the election in Macon County, must avoid this election. But when to this we add, that there was a total failure to hold any election in about two-fifths of all the civil districts in the other counties of the Chancery Division, this failure in many instances, resulting from the omissions or misconduct of officers whose duty it was to hold the elections; that in a number of the districts in which elections were held, they were held by officers not authorized by law to hold them; that in many instances the polls were opened and closed at irregular and illegal hours; and that throughout the Chancery Division, many of the proceedings were characterized by irregularity, confusion and uncertainty. These facts, with the total failure to give notice of the election in Macon County, leave no doubt upon the mind, that, in this case, there has been so gross and palpable a failure of opportunity for a free *599 and equal expression of tbe popular will, that the election cannot be permitted to stand.
It may be that the popular will has not been defeated in the present instance, but this we cannot know; and if we could know this, we could not lay down a rule which would enable ministerial officers in the future to commit frauds upon the community, and at their discretion to disfranchise the electors of a material and substantial part of an electoral district.
The election being void, the issuing of a commission by the Governor to the defendant, being a mere ministerial act in pursuance of the election, cannot have any effect. The decree must be, that the defendant is not entitled to hold the office by virtue of the election or of the commission; and he will be prohibited from exercising the functions of the office under the same. The rights of Barry under his commission are not before us, and we make no decree in relation to him.